Thank you, Your Honor. Attorney Robert Mitchell on behalf of the Von Esch's, if it pleases the court, I'm just going to jump right in. Asset is a medical debt collector. They're trusted by seven different hospitals to collect medical debts. So we're talking about a large organization acting on behalf of large organizations. Asset is required to avoid demanding money from patients that patients don't owe. And what does it mean to avoid these types of violations? Well, this court has already decided in Rikert that what that means is that debt collectors cannot just sit back, wait to make mistakes, and then institute a procedure that would correct that mistake in the future. Rikert also told us that the collector is required to maintain procedures that are designed to avoid discoverable errors, including but not limited to errors and calculations and itemization, which is exactly what we're dealing with in this case. What Rikert tells us is that debt collectors need to anticipate and prevent problems before they occur. Now, in this area of collection, that's rather easy to do. We're talking about a medical debt collection firm that specializes in medical debt collection. When we deal with medical debts, there's a document called an EOB, an explanation of benefits that an insurance company produces, and that document tells us everything that we need to know about the debt. It tells us what was billed, what was paid, what the patient owes, makes it pretty easy on anybody trying to collect that debt to figure out just exactly how much is owed. It is common knowledge in the medical billing industry that all anyone needs is that EOB, and you can answer all the questions of a patient's dispute, an insurance company's dispute, a hospital's dispute. Yet, Asset, as a medical debt collection expert, does not have any policies to even request an EOB. They don't have a policy to request it from the patient. They don't have a policy to request it from the insurance company. They don't even have a policy to request the EOB from their own clients, their own hospital clients. That was the testimony that was given in this case. Go ahead, Your Honor. Mr. Mitchell, I do have a question. I know you've been here before, up before the Ninth Circuit, went back. Yes, ma'am. There was serious emotions, you had a trial, and then that's why these additional dismissals are why we're here again. Could you tell me what was, at trial, the actual evidence of damages? The evidence of damages? Yes. If we're talking about the FDCPA portion, which is what I'm talking about, there was extensive testimony given by Mrs. Fangs-Rubanesh and Mr. Fangs-Rubanesh about the time that they had to take away from work, the time that they had to take out of their lives to address the situation repeatedly with their multiple disputes, to retain an attorney on their behalf to dispute this, the time that they spent on the phone with the hospital, the insurance company. I saw that, and I'm talking not just about the FDCPA, but also the CPA case because actual damages are the same. Was there ever a dollar amount put on these actual damages? During the trial testimony, what we did was solicited a testimony about approximately how many hours each of them took away from their jobs to devote to correcting this problem, investigating this problem, seeking out representation. And then we solicited what their hourly rate was, which is pretty standard for this type area of practice. And then you just take the number of hours that they had to take away from their lives to devote to this and multiply it by their hourly wage. So, I mean, I have a simple question. What was the dollar amount of actual damages presented? Off the top of my head, Your Honor, I don't remember the exact dollar amount. And I think that we got to was simply letting the jury know the amount of hours and then their hourly rate. And I think that the jury was going to put the final dollar on it. If the judge is looking for a ballpark, it's not enormous. It's probably a thousand dollars. Okay. Thank you. I appreciate that. Okay. Continuing on, again, ASSET has no procedures designed to collect an EOB that would prevent this situation from happening. When a patient disputes a bill and the EOB has all of the answers about the dispute, ASSET doesn't ask anyone for that EOB. In this particular case, what we had going into summary judgment the second time around was ASSET admitting that it mailed a letter demanding approximately $7,000, that it made a subsequent telephone call demanding approximately $7,000, ASSET admitted that that money was not owed, which means that ASSET admits violating the statute by demanding an amount that was not owed. So the only way that ASSET can avoid liability under the strict liability statute is to prove the single affirmative defense provided under the statute, they have to affirmatively prove that. That defense is a narrow exception that requires ASSET to prove two things. And the second element is that this, that these violations occurred despite maintenance of procedures that would have helped avoid them. Sorry, Ron. How do we know that the EOB that ASSET didn't request and Forrest didn't get would have accurately reported what the problem was because Legacy was making a big mistake itself. So how do we know that the EOB, had it been requested, would have shown what was actually going on? That's ASSET's own testimony, your honor, that when they received the EOB, they closed the account. That's ASSET's testimony because the EOB did show what was paid. And it turns out that the EOB reflected the exact amounts, the exact claim itself, the amount that was paid by the insurance company and the remaining $400 balance in the EOB was exactly what plaintiffs had been saying, exactly what their insurance company had been saying, and exactly what plaintiff's attorneys had been saying for months on end. Okay, thank you. Okay. Thank you. Ms. Hutchinson. Thank you, your honor. I will address the request for reassignment to a different trial judge on remand. Court has broad discretion to reassign to a different judge on remand. And basically the court looks at the three factors in the quack case. Does the trial judge have a substantial difficulty in putting previously expressed views out of his mind or made findings that were determined to be erroneous or based on evidence that should be rejected? Number two, is it advisable to preserve the appearance of justice? And number three, would there be waste and duplication by assigning the case to a different judge out of proportion to the preservation of justice? The court doesn't need to look for any actual bias or impugn any lack of integrity on the part of the judge. So let me talk about how those factors are met here. The trial judge in this case has previously expressed very strong views against the FDCPA, against FDCPA plaintiffs, and against this case in particular and these plaintiffs in particular. In the Bogue versus NCO case, he compared FDCPA cases to an infestation, said that some plaintiffs are even seeking to turn their own failure to pay in the profit repeatedly, that nuisance settlement of flimsy cases that require no real effort should not result in any fees to the plaintiff's attorneys because that would be a miscarriage of justice. So these are the previously expressed views of the trial judge. And in this case, like in Manley versus Rowley, where the trial judge had a strong personal matrix and belief against the kinds of cases, if you look at page 1598 of the record, he compares this case to robocall cases in a way that was clearly disparaging. If you look at pages 499 to 500, 264 and 417 of the record, he expresses a distaste for this irrational litigation and frustration. At page 1763 of the record, he expresses a sentiment about society getting very dependent and then said he was going to take a recess. Pages 1146 to 1148, he warns against sanctions and furthermore, this is the second appeal based on the same issues. Now, for the second part of that test, we have multiple erroneous findings. The first one is that the trial judge applied the wrong legal standard to the FPCPA when he dismissed the case. And secondly, he didn't even address the Washington Consumer Protection Act claim at the Rule 50 dismissal, didn't address it at all, didn't give us an opportunity to hear anything. At page 757 of the record, he says that the FPCPA is not strict liability. At page 1756 of the record, he says that intent is not an element of the FPCPA and asks whether it was an intentional deceptive practice. Page 1598 of the record, he applies a contributory fault theory to the plaintiffs saying, quote, from my perspective, there's enough blame to go around. Page 1148 of the record, he says plaintiffs suffered no financial loss and they had multiple legitimate debts. Page 1763 of the record, he says that assets policies procedures, job one is to trust reliable creditors. That's a legal theory that this court has already rejected in McCulloch and Reichert. Page 1764 of the record, he conflates the E-5 violation with the D violation saying that there's no evidence anybody ever threatened litigation because there was no unprofessional or accusatory tone. They're separate parts of the statute. So clearly, reassignment is advisable to preserve the appearance of justice here and this panel doesn't even need to, you know, look deeply into whether the trial judge was biased. And furthermore, it wouldn't create any waste or duplication. It would actually be the most efficient thing if this court were to give plaintiffs judgment on liability and we went back for just a trial on damages. We could do that in a day. But the concern is that if we were to get reassigned to the same trial judge, it might result in a third appeal and I don't think anybody wants that. Additionally, there are plenty of structural errors and unusual circumstances in this case. There was some improper coaching from the bench of the defense witnesses. After several objections that he overruled, he would then turn to the defense witness and say, if she knows she can say, if she knows she can answer, she can answer if she knows. It looked very much like the deposition conduct that the standard orders in our district tell us we should avoid. And those are at pages 1412, 1405, 1436, 1720, 1723, 1523, 1438, and 1698. And lastly, it's a very unusual circumstance where we go up on appeal and we come back and the trial court says he has to read the tea leaves when he's reading the order from this court, says it's cryptic, says that it's unnecessarily ambiguous, and then dismisses our case for the same reasons the second time. It's very much like that U.S. versus Rassam case where the trial judge imposed the same exact sentence because he didn't like the instructions from this court. And so with no opportunity to cure at the Rule 50 dismissal and all of these clear irregularities, unusual circumstances, this is the very situation where this case should exercise its authority to tell us we get a different judge on remand. Thank you. Thank you. Now hear from Mr. Hassan from Asset Systems. Sorry, Your Honor, I had to unmute my microphone, so I hope I got it right. May it please the court, counsel Jeffrey Hassan on behalf of Asset Systems. The issues here, Your Honor, are did the district court error in allowing assets motion for directed verdict on plaintiff's claims of the FPCPA and WCPA in that case? The answer is no. As best stated by ACA International, a reversal would allow accounting error by a creditor or employee to transform the FPCPA into a rule requiring each debt collector to sign a fact checker. Affirmance of the district court's dismissal will clarify the duties of the debt collector and allow those attempting compliance to remain a viable business. The court should not extend its prior holdings to create an obligation to sift through creditor records in a hunt for inexplicable and baffling errors. In this case, if I can ask you this, at the point at which one ashes dispute the bill, the argument from the other side is that there was an obligation as just part of the reasonable procedure to ask for the EOB. Now, maybe they would argue further that you should have the EOB in the first place, but I'll ask it in a narrower way. Once you know that there's a dispute, there's an argument that the EOB should have been requested. Was it requested and if not, why not? The answer, Your Honor, is no, the EOB was not requested by Asset. The answer of why has to do with the answer to that question, meaning that Asset's required to have reasonable procedures in place. They're not required to have all the procedures. So the question is, set up by the other side, why is it not a reasonable procedure in that circumstance to ask for the EOB? Because the reasonable procedure, first of all, Asset doesn't have access to the EOB that the plaintiff, that Legacy had. In this case, even if they had gotten Legacy's EOB, Legacy's EOB was a compilation of a number of accounts that were doing, if the plaintiff, like in the last case, Your Honor, when Legacy was allowed to be dismissed, it's not a defense to the WCPA to have notice and not do anything about it. That's why Legacy was let off the hook by this court in the last case. And in this case, the defendant, the plaintiffs in this case had the EOB since 2013, they received notice from Asset in 2014, they didn't give the EOB, nor did Asset know of its existence at that time. It wasn't until August of 2015. Let me ask you this, you say Asset didn't know of its existence. If it's talking about a medical billing from a hospital, an EOB would exist, correct? Generally, yes, if there's insurance coverage. You're saying that Asset didn't know it existed, but then I think you just said no, generally it would exist. So Asset probably should have thought there was one, right? That's one of the procedures they could have implemented. They didn't in this case. So I can't just say that that's it. The question though is not whether or not the EOB was the right procedure to have in place, because clearly in this case, if they had requested the EOB, it would have stopped back in January of 2016. I can't dispute that. The problem is that the issue is reasonable procedures in place. In this case, Asset did have reasonable procedures in place and followed the reasonable procedures that they did have in place. The plaintiffs argue that there was no procedures in place and they haven't put on any substantial evidence of what reasonable procedures would be if it were not what Asset's procedures are. Now- Counselor, Judge Gould, if I may interject, please for a moment. What was the evidence that Asset put on about the procedures it had that you claim are reasonable? Thank you, Your Honor. I will address that in the four procedures that Asset had in place. First of all, legacy was a reliable creditor. Number one, if they're not reliable, the information that they provide can't be relied upon by Asset. The proof at the time that the representations were made is that they had 32 years of service with that legacy and that legacy was reliable. But that's not the only procedure that was in place. When a dispute is received by Asset on the account, Asset obtains a copy of the itemization from legacy and compares that to the balance of the amount that's sought. In this case, legacy sent an itemization that was consistent with what Asset's balance was in each situation. So they did follow that procedure. Number three, is when coverage is alleged by the plaintiff, the evidence was that Asset allows them time to go and explore the coverage issue. In this case, that's what happened. Asset gave the plaintiff's time to provide information that the amount was wrong. The plaintiff didn't do that. And number four, when the amounts are inconsistent with the itemization, Asset communicates the dispute and discrepancy, the legacy, and confirms the balances due with legacy. In this case, a legacy confirmed the account on each occasion, but in the last situation with the overall circumstances, by the way, the procedure is that if legacy cannot confirm, Asset will close the account. If legacy confirms, Asset communicates that to the debtor and moves forward. In this case, when Asset received the EOB in August of 2016, notwithstanding legacy still saying that the amount was due, Asset closed the account on its own. Legacy never closed the account while the account was active at Asset. Asset, the only reason the account was closed, because Asset's procedures were reasonable and in place to avoid collecting more amount when they had evidence in front of them that said the amount was incorrect. I have a question under the Washington Consumer Protection Act that goes to this time frame that you lay out. Under subsection 21, it talks about trying to collect money that's not owed. So you've indicated that by August, Asset had come to the conclusion that only the $400 was owed. But when it started out, Asset thought it was $7,000 or something in that neighborhood. Is that right? No, it was $5,331.51. Some number quite a bit bigger. So how does the statute work when it starts out and Asset thinks one number is too high and it's a smaller number? How does that fit into the language, whether there's liability for trying to collect money not owed? In this case, there's a problem. I'm bringing up a language, Your Honor, I apologize. You're talking about number 21. Correct. Or attempt to collect, in addition to the principal amount of the claim, any sum other than allowable interest, collection costs, or handling fees expressly authorized by statute. And that's what the statute is talking about. It's not talking about principal amount. It's talking about the additional fees. And it also goes on to say, in the case of suit, attorney fees and taxable court costs. So the 21 is the emphasis is not on whether or not the principal is due or not. The emphasis is on whether additional charges are due. In this case, interest is due under Washington law under RCW 19.52.010. And there's been no argument to the contrary in the brief that it's due under 19.52.010. So there's the right to interest under the statute. The amount is incorrect because of the calculation, the calculation being on the wrong principal. But 21 doesn't apply because 21 has to do with the additional sums. And is there a section of either the Washington Consumer Protection Act or the FDCPA where you try to collect an incorrect amount and simply that action lands you into a liability category? Your Honor, I haven't looked through each section because I emphasize the sections that were cited by the plaintiffs in this case with regards to Washington Consumer Protection Act. And they were 15, 16 and 21. 21. So those are the ones that I looked at in response to the FDCPA. It's more than just an amount that's incorrect because certainly that you could talk about 1692B2A or B2B, I'm sorry, with regards to collecting an amount that's not due because there have been cases with regards to that. The problem with that argument is that there has to be a material violation. And in this case, there's no evidence that the plaintiffs would have done anything different if the balance were $400 versus the balance being $5,000. And it's not asset burden of proof to prove materiality. The burden of proof to prove materiality is on the plaintiffs. And their asset has proven that the amount that was due was, even if there was a material violation, asset proved that they had reasonable procedures in place. Not all procedures. I mean, I have to, not all procedures in place, but they had reasonable procedures in place to prevent the error. And this is one of those errors that maybe even if they requested the EOB, that wouldn't have been enough because the employees at Legacy testified that even if the employees at Legacy had received the EOB, that they wouldn't have changed the because they relied on their computer system. In this case, the reason that the amount was different was because Legacy was out of contract with Kaiser. So that was the explanation for the amount being different. So if you look at Christina Thompson's testimony, she testifies that even if they, meaning Legacy had been given the EOB, that the amount wouldn't have been changed in Legacy's mind. And asset has a right to rely on that. Do you agree in broad principle that what's left here, if you take the damages at face value, and I'm not saying they should be rejected or accepted, but at face value is around a thousand dollars plus attorney's fees, is that what we're really talking about? Should the Von Esch's prevail on everything? I think that, yes, that the only thousand dollars we're talking about is the statutory damages under the FDCPA. I don't think they put on any proof of damages that were approximately caused by asset as to any violation of the WCPA. The parking that they had talked about in the pleadings and that stuff was not put on an evidence. It was an opening statement. There was no evidence of any injury under the WCPA. So, and the only, as far as the evidence of damages under the FDCPA, I think all that they're really requesting are statutory damages of a thousand dollars. Really the damages in this case were not caused by asset. The damages in this case, if anything, were caused by Legacy. And so that would be a reason that they can't show proximate causation that goes with asset at all. Let me ask you this, you're asking us and asking the district judge to conclude as a matter of law, that the procedures followed by asset were reasonable. Why is that not a jury question? That's, that's a very good question, your honor. And obviously that's what you're paging to, but in this particular case, the reason it's not a jury question is that the only evidence before the judge were the, it was the evidence put on by asset. There was no contrary evidence put on by the plaintiffs as to what reasonable procedures could have been. They could have brought in an expert and said some other procedure was applicable and that was their duty. They didn't do that. The district judge with the evidence before them, the district judge didn't have any contrary evidence that these weren't reasonable procedures. They had evidence that they were reasonable procedures and that's what the district judge concluded. Wait a minute. Why do you say there's no evidence that there wasn't a reasonable procedure? It's clear that once the EOB shows up, asset realizes that this is a mistake. And there was no evidence from which the jury could have concluded at the point the judge already gives the judgment as a matter of law that an EOB could have been requested? Your honor, the EOB question is only argument. It's not evidence. Yes. The EOB was provided to asset at the end, but it wasn't evidence that those were reasonable procedures. The evidence of the reason. Let me ask it this way. Was there no evidence from which the jury could have inferred that asset could have asked for an EOB? Under the, the only evidence that that was in the record, but it wasn't associated with whether they were reasonable procedures was the EOB issue. So, yes, that was in the record, but the jury is based on substantial evidence as far as plaintiffs having to come forward with some type of evidence that these were not reasonable procedures. They failed in that burden. They haven't submitted any evidence that these were not reasonable procedures. While we have submitted all the evidence that they are reasonable procedures. Any other questions? Thank you. Yeah. I have a question. Judge Gould. Wait, I'll, I'll pose my questions at the end. All right. So we'll now turn to the rebuttal on behalf of the Von Esch's. Attorney Robert Mitchell for the record, your honor. Thank you. Regarding the reasonable procedures question, the burden does not rest with plaintiff that is an affirmative defense that needs to be affirmatively proven by the defendant and the defendant was unable to do that. In deposition, Mary Emerton, the individual who signed two declarations on behalf of asset was asked, when was the last time you conducted training of your staff? She said, I don't know. Was it a month ago? I don't know. A year ago, maybe. I don't know. Do you think it happens at least once a year? I don't know. You don't know how often you train your staff. I didn't come prepared to answer that question. Are there any kind of training manuals that you use when you train them? No. Do you know if there are manuals that are used in the training? I don't know. The training itself, she said, consists of, they train the collectors on the FECPA one time when they're hired. A quote from her is that there is no repeat training. They talk about reliance on a reasonable creditor, but then they admit during this case that legacy was not a reasonable creditor or reliable creditor. And the reason for that is that this issue overlapped with 2,500 other accounts. So that speaks to the materiality issue. This was a material mistake because this case, when it was filed, caused to legacy and legacy wrote those debts off. So this is a material violation and suggested requesting thousands of dollars from a consumer that isn't owed is not a material violation. I don't know how you get there. Would that not be evidence that in fact, they were responsive to credit complaints? Say again, your honor? Would the fact that they looked at accounts and decided to pull those not be evidence that they took reasonable efforts? It is not your honor because in Rikert, what this court said was that it is before the violation happens to avoid the violation is what's required to prove that affirmative defense and avoiding a violation means that you need to anticipate it and you need to prevent it from happening in the first place. Rikert specifically said that collectors cannot sit back, wait to violate the statute, and then take action to ensure that it doesn't recur. And that's exactly what happened in this case. So in your, in this case, I know you've gone to mediation in the district court and also the court of appeals. So I am a lit and I don't, obviously we are not privy to what may have happened there, but it is kind of a mystery to me why a case with nominal damages and only attorney's fees couldn't settle, do you think another round could potentially be productive? Absolutely. I think that if this court remands this case back to a different judge and that judge's scheduling order says that we need to go to mediation, I think at that point, the parties will probably come together. I do not agree that the damages in this case are limited to a thousand dollars. The plaintiffs, both of them put on substantial evidence about how this will while they had just had a baby, this accountant deals with a newborn. They had another child and they were dealing with this and it wrecked their lives, mom lost sleep, and it was hard to find a dry eye in that room to suspect that that jury was not going to give these individuals a substantial emotional distress award is a mistake. I was there. I saw it. Is there, what, what is the cap on, is there a cap on damages under FDCPA? Not in an individual action, your honor, the sky was the limit. My counsel, Judge Gould, if I could ask you a question. Yes, your honor. My question relates to Judge McEwen's question, but you responded to her by saying, yes, you could mediate again back at the district court if, if we remanded and removed the judge. I know there've been some cases I've been on where a panel, may have prepared an opinion and then enter an order that its mandate would not enter, would mandate, would not issue for a period of time to permit mediation if the parties wanted to. That may prove helpful in this case, your honor. My fear is that because of the district court's comments about sanctioning this counsel to the tune of over six figures, that defense may be emboldened in a mediation setting until we clear the record that the dismissal was improper and we get a remand and a new instruction to go to mediation. But what's hanging in the air right now, your honor, is a hope from the defendant that Sarah Ellen and I are going to personally pay the defendant six figures for having audacity to litigate this case. But as a practical matter, as I understand it, if you were to prevail on this appeal or any part of it, apart from settlement, the remedy would be to go back to trial. Is that right? Yes, your honor. And I think that any district judge that it's remanded to would say, before you go to trial, you need to take another shot at mediation. If it's remanded to a new judge and I'm that new judge, what I would say is you guys are going to mediation first. They have the ability to run their courtrooms and issue scheduling orders and you don't get to trial without a scheduling order. If I was them, I'd say you're going to mediation first. Then we would submit to mediation. I think the defendant would too. And may I ask when you, when you went to mediation, was it before another district judge or was it part of the mediation panel out of the Federal Bar Association? It was a retired state court judge, your honor. Okay. Thank you. Very experienced. Yes. Was very knowledgeable about this area of law. And we just weren't able to come to a resolution. Thank you. I think that will conclude the argument unless my colleagues have any further questions. I have no question. No, I don't. Thank counsel for coming today. As you can see, we really can get quite a bit of information from everyone in these video hearings. So we appreciate your accommodation. And the case just argued Von Asch versus Asset Systems is submitted. And we are adjourned for this morning. Thank you. Thank you.
judges: McKeown, W. Fletcher, Gould